# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| MDKC, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-00395-DGK |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This lawsuit arises from a new ordinance regulating Short Term Rentals ("STR") in Kansas City, Missouri, that went into effect on June 15, 2023. Plaintiffs are property owners who own STRs in Kansas City, Missouri.[1] Now before the Court is Defendants City of Kansas City, Missouri ("the City"), Neighborhood Services Department of Kansas City ("Neighborhood Services"), and the Board of Zoning Adjustment of the City of Kansas City's ("the BZA") motion to dismiss all counts in the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 22. For the following reasons, the motion is GRANTED.

## Standard

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

---

[1] Plaintiffs' counsel, Megan Duma, is also a Plaintiff.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Background

Accepting the allegations in the Complaint (ECF No. 1) as true, the Court finds the facts to be as follows for purposes of resolving the motion to dismiss.

Prior to 2018, the City had not specifically addressed STRs—lodging accommodations of less than thirty consecutive days—in the City's zoning code. In August 2018, the City implemented an ordinance regulating STRs under Chapter 88 of the City Code ("2018 Ordinance"). The Complaint alleges the 2018 Ordinance allowed STRs in residentially zoned areas if the applicant submitted the required documentation, like consent signatures from fifty-five percent of their surrounding neighbors, and allowed STRs as a matter of right in business zones and other commercial zones so long as the applicant paid the City's STR fee. The Complaint alleges the 2018 Ordinance made approving an application non-discretionary, meaning the City had to issue a STR permit if the applicant submitted the correct documentation.

Six Plaintiffs have been operating STRs since before the 2018 Ordinance went into effect. All other Plaintiffs purchased, improved, and/or began operating their STRs after the 2018 STR Ordinance was passed. While not all Plaintiffs have begun operating their STRs to date, all Plaintiffs have made substantial investments in their STRs—e.g., property improvements, furnishings, etc.—in reliance on the 2018 Ordinance remaining in place.

2

Sometime in late 2022, the City conducted a Community Pulse Survey of over 1,700 Kansas City metro residents regarding the needs of the community and STRs. On April 19, 2023, the City held a public hearing on a newly proposed STR ordinance. The City limited public testimony to one minute per speaker and cut off speakers after their minute was up. On May 3, 2023, the City held another meeting wherein public testimony was not permitted. On May 4, 2023, the City adopted the proposal in the form of two new ordinances: Ordinance No. 230267 and 230268 (collectively, the "2023 Ordinance"). *See* ECF Nos. 23-1 (No. 230267), 23-2 (No. 230268). The 2023 Ordinance distinguishes between "resident" and "non-resident" STRs.

- A resident STR "means any short-term rental whose registrant or proposed registrant demonstrates that they are a long-term resident of such dwelling unit[.]" § 56-802(p). A long-term resident is any natural person who "(1) maintains their primary residence on the parcel where the [STR] is located [i.e., lives on the parcel for at least 270 days per year]; and (2) certifies that they will maintain their primary residence on such parcel for a period of twelve months or more[.]" § 56-802(h); *see* § 56-802(m) (defining primary residence).

- A non-resident STR "means any short-term rental whose registrant or proposed registrant has not demonstrated that they are a long-term resident of such dwelling unit." § 56-802(i).

*See* ECF No. 23-2 at 2–3. Importantly, a "registrant" for the purposes of a resident or non-resident STR does not have to be the owner of the dwelling. *Id.* at 3, § 56-802(n). For instance, a registrant could be a renter.

The 2023 Ordinance allows resident STRs to operate in residential and non-residential zones but prohibits non-resident STRs from residential zones and applies density and city initiative restrictions on non-resident STRs in non-residential zones. Those with a *valid* STR permit issued

3

before the 2023 Ordinance was passed are exempt from its restrictions. *Id.* at 7, § 56-803(c)(d).[2] Plaintiffs refer to this exemption process as being "grandfathered" in.

Plaintiffs also claim the 2023 Ordinance requires third-party booking sites, like Airbnb and VRBO, to require a City STR Registration number for all properties listed on their platforms. Properties without registration numbers are to be de-listed from these platforms. Plaintiffs contend that if they are de-listed from these platforms or otherwise unable to operate their STRs, they will lose over $1,000,000 per year in rent.

The 2023 Ordinance's stated purpose is:

(a)    To identify those properties in the City that operate as short-term rentals, to better ensure they operate in a manner consistent with public health and safety, and to gain contact information for code enforcement and compliance;

(b)    To allow non-resident short-term rentals to operate in the City in a manner that promotes accountability and preserves the established character of existing neighborhoods; and

(c)    To encourage the cooperation of short-term rental booking service providers in accomplishing these purposes.

*See id.* at 2.

Violating the 2023 Ordinance can result in fines of up to $1,000 per day, imprisonment of not more than 180 days, or both. *Id.* at 12, § 56-810 (penalties).

---

[2] § 56-803(c) states "[t]he zoning a density requirements stated in this subsection shall not apply to the proposed registration of either a resident short-term rental as defined in this article or any short-term rental that, as of the date the Committee Substitute for Ordinance 230267 becomes effective, was a properly permitted Type 2 short-term rental pursuant to Chapter 88 of this Code that has not subsequently lapsed or been revoked."

§ 56-803(d) states the following are exempt from city incentive restrictions: "a resident short-term rental as defined in this article or any short-term rental that, as of the date the Committee Substitute for Ordinance 230267 becomes effective, was a properly permitted Type 2 short-term rental pursuant to Chapter 88 of this Code that has not subsequently lapsed or been revoked."

4

The primary issue in this case is the City's denial or deletion of Plaintiffs' pending applications in the KC Compass online system after the 2023 Ordinance was passed. On May 16, 2023, the City voided half of Plaintiffs' pending STR applications in the KC Compass system. On May 31, 2023, the City denied the remaining pending applications. According to the Complaint, the City has not refunded most of their application fees.

On June 12, 2023, Plaintiffs filed a motion for a temporary restraining order and preliminary and permanent injunction. The Court denied the motion for a temporary restraining order and refrained from ruling on the preliminary injunction until after the issue was fully briefed. In the interim, Defendants moved to dismiss, and the motion to dismiss is now ripe.

On June 15, 2023, the 2023 Ordinance went into effect. As best the Court can tell, all Plaintiffs believe they should be "grandfathered" in, i.e., permitted to operate their STRs under the 2018 Ordinance, because they have established vested property rights, or legal "nonconforming uses"[3] of their properties, for the reasons discussed below.

## Discussion

Before analyzing the merits of each count, the Court addresses some preliminary matters.

First, a few parties and counts have been dismissed at Plaintiffs' request. Plaintiffs request dismissal of Plaintiffs Front Porch Homes KC, LLC, Yvette Molina, Josh Ross, and Christine Shuck. *See* Pls.' Resp. at 34, ECF No. 33; Pls.' Mot to Dismiss Party, ECF No. 41. Plaintiffs also "agree to dismiss [Defendants] neighborhood services and the BZA".[4] Pls.' Resp. at 33. Plaintiffs

---

[3] "The term 'nonconforming use' means a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with the new use restriction." *Parkview Vale, LLC v. Bd. of Zoning Adjustment for City of Kansas City*, 620 S.W.3d 268, 273 (Mo. Ct. App. 2021) (quoting *Lamar Co., LLC v. City of Columbia*, 512 S.W.3d 774, 788 (Mo. App. W.D. 2016)).

[4] The Court notes that Plaintiffs' brief argues against the BZA's dismissal one paragraph later. This subsequent argument against dismissal appears to be a typographical error. Even if it were not a typographical error, the Court would still dismiss the BZA. The Complaint does mention the BZA outside of the case caption and the description of the parties. It does not allege the BZA did anything to injure Plaintiffs, so Plaintiffs have not demonstrated standing

have additionally requested the Court dismiss Counts V (seeking a declaratory judgment for violating the right to association) and VIII (seeking a declaratory judgment for violations of equal protection).[5]   Accordingly, the following are dismissed without prejudice: Defendants Neighborhood Services and the BZA; Plaintiffs Front Porch Homes KC, LLC, Yvette Molina, Josh Ross, and Christine Shuck; and Counts V and VIII.

Second, some of what the Complaint denotes as "counts" are not causes of action, but rather requests for relief.   For instance, Counts I (seeking a temporary restraining order, preliminary and permanent injunction, and a hearing on the matter) and XV (seeking attorneys' fees and costs).   Accordingly, these "counts" are dismissed.

Third, Plaintiffs' response in opposition to the motion to dismiss is so threadbare in defense of some of the counts that Plaintiffs have effectively waived any argument on these counts.   For example, in defense of Counts X–XIII Plaintiffs argue:

> **J.   Plaintiffs Have Adequately Plead A Right To Declaratory Relief To Exempt Their Properties As Prior Legal Uses or Under the 2018 STR Ordinance (Counts X–XIII of the Complaint)**
>
> As argued above, Plaintiffs have been denied their rights to procedural due process, and the City continues to take inconsistent positions on the rights to an appeal, and should be judicially estopped from going back and forth.   Those arguments are incorporated herein by reference.   For the purposes of pleading, the Plaintiffs have adequately plead facts that support the relief they seek.   It doesn't appear that the City is stating otherwise in its Suggestions.   Therefore, the Motion to Dismiss Counts X–XIII should be denied.

---

to sue the BZA. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding standing requires "the injury [] to be 'fairly . . . trace[able] to the challenged action of the defendant[.]'").   Thus, the BZA should be dismissed.

[5] The Court notes the conclusion of Plaintiffs' brief requests the Court "dismiss Counts V and VII." This appears to be a typographical error.

6

Pls.' Resp. at 31. This response is completely conclusory and unhelpful because it does not explain how Counts X–XIII apply to the facts.

Fourth, portions of Plaintiffs' response arguably mischaracterize the City's arguments. For instance, in the above example Plaintiffs argue, "[f]or the purposes of pleading, the Plaintiffs have adequately plead facts that support the relief they seek. It doesn't appear that the City is stating otherwise in its Suggestions." *Id*. Plaintiffs' argument totally ignores, or misses, the City's argument. The City spent four pages of its brief discussing why Counts X–XIII should be dismissed, specifically arguing the Court lacks jurisdiction to issue a declaratory judgment because a legal remedy exists, and that Plaintiffs' claims are not ripe for adjudication because Plaintiffs have not exhausted their administrative remedies. *See* Suggestions in Supp. at 29–32, ECF No. 23. Granted, Plaintiffs are correct that the City is not arguing these claims should be dismissed because Plaintiffs failed to plead specific *facts* with respect to these counts. Instead, the City is arguing these counts are defective for *legal* reasons, i.e., lack of jurisdiction and standing, arguments Plaintiffs do not address. And by failing to address these arguments, Plaintiffs have waived their opposition to them. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019). Accordingly, Counts X–XIII are dismissed without prejudice.

Fifth, instead of clarifying some basic important facts, like which Plaintiffs submitted complete STR applications before the 2023 Ordinance went into effect, Plaintiffs' briefing muddles it. At one point in their response, Plaintiffs represent that all seventeen of the affidavits attached to their Complaint demonstrate they "submitted all required documents in compliance with the 2018 STR Ordinance," and those "who were operating [STRs] without a current 2018 STR Ordinance permit/registration, had done everything required of them to get one." Pls.' Resp.

7

at 17.  But at other points, Plaintiffs state only "most" of them had everything that was required under the 2018 Ordinance.  *Id.* at 25, 25 n.48 (citing a chart summarizing application statuses and their personal affidavits in support).  This chart, taken at face value, suggests every Plaintiff had a properly pending STR application, albeit two properties show an application date of May 4, 2023 (the day the 2023 Ordinance was adopted).  The chart, however, fails to include those Plaintiffs who never submitted an application or have yet to begin operating their properties as STRs.  Some of Plaintiffs' affidavits even admit their pending applications in the KC Compass system were *incomplete* due to missing documentation (like neighbor consent signatures).  So, the Court is left wondering which Plaintiffs had complete applications pending and which did not.

Sixth, Plaintiffs' response repeatedly asserts new facts and legal theories not advanced in the Complaint.  For instance, Count VI states Plaintiffs' procedural due process rights were violated because they were not given a meaningful opportunity to be heard on the then-proposed 2023 Ordinance at two public hearings, and because paper copies of the amended 2023 Ordinance were not provided to the public.  Compl. ¶¶ 105–12.  But Plaintiffs' response to the motion to dismiss discusses neither of these theories; instead, it alleges a new and different theory of liability: that due process violations occurred when the City denied their applications and took different stances on their right to appeal.  Plaintiffs' attempt to avoid dismissal by introducing a new theory is unavailing.  The Court will not consider new facts or theories not pled in the complaint.  *See Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990 n.4 (8th Cir. 2015) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss.")).  Count VI is dismissed without prejudice.

The Court now addresses the substance of the Motion.

# I. Counts X–XIII and portions of Count IV are dismissed for failure to exhaust administrative remedies.

In addition to the waiver issue noted above, Counts X–XIII and aspects of Count IV are dismissed because the Court lacks jurisdiction to determine whether Plaintiffs have vested property rights or established valid nonconforming uses in their properties since Plaintiffs have not exhausted their administrative remedies.

## A. Declaratory judgments as to legal nonconforming uses (Counts X–XIII).

Counts X–XIII request declaratory judgments that Plaintiffs' properties are legal nonconforming uses for a variety of reasons[6] under Missouri law. The City argues Plaintiffs are not entitled to this relief because they failed to exhaust administrative remedies before filing suit.

"Pursuant to Missouri law, a plaintiff is required to exhaust those available and effective remedies afforded by an administrative agency prior to seeking relief from the courts." *Kansas City Sand & Gravel, LLC v. City of Kansas City, Missouri*, No. 08-0730-CV-W-SOW, 2009 WL 10672244, at *3 (W.D. Mo. Sept. 15, 2009) (citation omitted) (finding court lacked jurisdiction to hear plaintiff's claim that the City failed to issue it a conditional use permit because plaintiff did not exhaust administrative remedy first). "The exhaustion of administrative remedies is a jurisdictional requirement for a declaratory judgment action." *N. G. Heimos Greenhouse, Inc. v. City of Sunset Hills*, 597 S.W.2d 261, 263 (Mo. Ct. App. 1980) (quotation omitted) (remanding and ordering dismissal of petition because plaintiffs failed to exhaust administrative remedies before filing a declaratory judgment action against the City seeking to declare their use of property

---

[6] Specifically, because Plaintiffs submitted all documentation and information required under the 2018 Ordinance before the 2023 Ordinance became effective, or they have legal nonconforming uses that were established before the 2018 Ordinance was enacted (Count X); Plaintiffs made substantial investments in their properties in reliance upon the 2018 Ordinance remaining unchanged (Count XI); the City's intentional delay in approving applications under the 2018 Ordinance created vested property rights based on the doctrine of laches (Count XII); and the City's failure to enforce the 2018 Ordinance created vested property rights (Count XIII). Compl. at 20–23.

9

as a legal nonconforming use); *see Normandy Sch. Dist. v. City of Pasadena Hills*, 70 S.W.3d 488, 490 (Mo. Ct. App. 2002) (referencing case affirming dismissal where plaintiff appealed the City's denial of its building permit application directly to the trial court instead of appealing to the BZA).

Here, section 88-575-01 of the City's Zoning and Development Code authorizes the BZA "to hear and decide appeals where it is alleged there has been an error in any order, requirement, decision, or determination made by an administrative official of the [C]ity in the administration, interpretation, or enforcement of this zoning and development code." ECF No. 23-3 at 2. Yet, Plaintiffs did not avail themselves of this process.[7] Counts X–XIII are dismissed without prejudice.

### B. Unlawful taking (Count IV).

Count IV alleges an unlawful taking of property in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 26 of the Missouri Constitution. In part, Count IV requires the Court to determine whether Plaintiffs had valid nonconforming uses of their properties when the City denied/deleted their applications. As best the Court can tell, the Complaint seeks damages for an unlawful taking of property rights because the 2023 Ordinance (1) deprives them of all economically viable use of their property; (2) deprives them of vested property rights acquired before the 2023 Ordinance became effective; (3) deprives them of vested property rights established through investment in properties that were made in reliance on the 2018 Ordinance remaining in place; and (4) deprives them of vested property rights

---

[7] As best the Court can tell, since this lawsuit was filed some Plaintiffs have filed appeals with the BZA; the Court cannot tell from the existing record exactly which Plaintiffs have appealed and what, if any, success they have had. A later filing suggests the City "reversed course" and issued 2018 STR permits to seven Plaintiffs and that other Plaintiffs have meetings scheduled with the BZA on future dates. *See* Pls.' Draft Mot. at 1, 1 n.1, ECF No. 44-1 (the Court uploaded this draft motion to ECF after receiving it from Plaintiffs' counsel via email).

acquired because the City delayed processing their STR applications. The City argues none of these reasons amount to an unlawful taking.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not be taken for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (internal quotation marks and citation omitted). And under Missouri law, "a pre-existing, lawful, nonconforming use is a vested property right, which cannot be abrogated by a newly enacted ordinance unless just compensation is paid to the landowner." *Scope Pictures, of Missouri, Inc. v. City of Kansas City*, 140 F.3d 1201, 1206 (8th Cir. 1998) (citing *Hoffmann v. Kinealy*, 389 S.W.2d 745, 748–50 (Mo. 1965) (en banc)); *see Lamar Co., LLC v. City of Columbia*, 512 S.W.3d 774, 788 (Mo. App. W.D. 2016); *Parkview Vale, LLC v. Bd. of Zoning Adjustment for City of Kansas City*, 620 S.W.3d 268, 273 (Mo. Ct. App. 2021).

Three of the four arguments Plaintiffs raise necessarily require the Court to address whether Plaintiffs had valid nonconforming uses of their property, which the Court cannot do since Plaintiffs failed to exhaust their administrative remedies before filing suit. Thus, the only argument properly before the Court is whether the 2023 Ordinance deprives Plaintiffs of all economically viable use of their property so as to constitute an unlawful taking.

This claim fails. Total regulatory takings are those that deny a property owner all economically beneficial use of the property. *See Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 441 (8th Cir. 2007) (citing *Lucas v. S.C. Coastal Couns.*, 505 U.S. 1003, 1019 (1992)). Simply because a plaintiff has been denied the most profitable use of the property does not mean a taking has occurred. *See Andrus v. Allard*, 444 U.S. 51, 66 (1979).

11

Here, Plaintiffs have not been denied all economically beneficial use of their properties. For instance, Plaintiffs can still lease their properties on a long-term basis, live at the properties themselves, or sell the properties. *See, e.g.*, *Nekrilov v. City of Jersey City*, 45 F.4th 662, 671 (3d Cir. 2022) (explaining restrictions on short term rentals did not constitute a taking). Thus, a taking has not occurred. Accordingly, Count IV is dismissed without prejudice.

## II. Count II fails to plead a plausible violation of the dormant Commerce Clause.

Count II alleges a violation of the dormant Commerce Clause, U.S. Const. art. 1, § 8, cl. 3. Compl. at 12. The dormant Commerce Clause prevents "states from enacting 'laws that discriminate against or unduly burden interstate commerce.'" *IESI AR Corp. v. Nw. Arkansas Reg'l Solid Waste Mgmt. Dist.*, 433 F.3d 600, 604 (8th Cir. 2006) (quotation omitted). The analysis here is two-tiered:

> First, if the state law discriminates against interstate commerce— facially, in purpose or in effect—it will be invalidated unless the state can show, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. A state law discriminates against interstate commerce if it treats in-state economic interests differently than out-of-state interests in a way that benefits the former and burdens the latter. Second, a law that does not overtly discriminate against interstate commerce, but instead regulates even-handedly, will still be invalidated if the burden it imposes upon interstate commerce is clearly excessive in relation to the putative local benefits.

*Id.* (internal citations and quotation marks omitted). Importantly, the dormant Commerce Clause is only implicated when the discrimination is between "substantially similar entities." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 342 (2008).

Plaintiffs argue the 2023 Ordinance violates the dormant Commerce Clause because it discriminates against out-of-state owners (i.e., residents of Kansas and California) by treating them differently than in-state owners and there is no legitimate purpose behind the 2023 Ordinance.

Plaintiffs are specifically concerned with the effect this Ordinance has on "whole-home" STRs—the ability to rent out an entire home—as opposed to "home-sharing," i.e., renting out only a portion of the home while the home's registrant remains on the premise. They contend in-state owners can freely live in their homes for 270 days per year and then operate their home as a STR for the remainder of the year.[8] Out-of-state owners, on the other hand, must lease their properties to renters for one-year, making it impossible to operate their properties as STRs for any portion of the year. *See* Pls' Resp. at 9–10. The City argues the 2023 Ordinance does not violate the dormant Commerce Clause.[9]

The 2023 Ordinance does not discriminate against interstate commerce. First, the 2023 Ordinance does not require the primary resident in the dwelling to be the owner of the dwelling. *Compare Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 450–51 (9th Cir. 2019) (finding no dormant Commerce Clause violation where the STR ordinance did not require the primary resident in the dwelling to be the owner of the dwelling), *with Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 326 (5th Cir. 2022) (finding New Orleans' STR ordinance violated the dormant Commerce Clause because it prevented STRs in residential neighborhoods unless the property was the "*owner's* primary residence," thus effectively preventing out-of-staters from operating STRs) (emphasis added). Thus, out-of-state owners are not precluded from the whole-home market here. Nothing prevents out-of-state Plaintiffs from leasing their property to a long-term tenant under the

---

[8] Plaintiffs refer to these individuals as "snowbirds." For instance, "snowbirds" live in Kansas City for most of the year but reside in Florida for three months out of the year to escape the cold weather. While they are in Florida, they can rent out their Kansas City home as a STR.

[9] At the outset of their response, Plaintiffs remark "[t]he City seems to admit that Plaintiffs have adequately pleaded facial discrimination[.]" Pls.' Resp. at 8. This misstates the City's brief. The City simply stated Plaintiffs' constitutional challenges were facial in nature, as opposed to as applied, because Plaintiffs want the whole 2023 Ordinance invalidated. *See* Suggestions in Supp. at 2–3. Nowhere in the City's brief does it concede Plaintiffs adequately pled facial discrimination.

stipulation they are absent ninety-five days of the year to allow the owner to separately lease as a whole-home STR during that time. Further, Plaintiffs fail to recognize the 2023 Ordinance applies equally to out-of-state owners and in-state-owners who reside in Kansas City, Missouri, but at a property separate from their rental property. Additionally, those who obtained a valid STR permit before the 2023 Ordinance went into effect (whether they live in-state or out-of-state) are exempt and can continue operating their STRs as they did under the 2018 Ordinance.

Second, out-of-state owners can still extract economic profit from their properties. *See* Reply at 4, ECF No. 40. In addition to the whole-home option described above, out-of-state owners can also lease a portion of their property to a long-term tenant and home-share the rest, lease exclusively to long-term renters, sell their property, or operate STRs in non-residential zones subject to density and city incentive restrictions. *See Rosenblatt*, 940 F.3d at 450–51 (listing similar reasons in finding STR ordinance did not violate the dormant Commerce Clause).

Even if the 2023 Ordinance implicates interstate commerce through its incidental effects, it still passes muster under the second-tier analysis. At the second tier, Courts utilize the so-called *Pike* test to balance a legitimate local public interest against its incidental burden on interstate commerce. Under the *Pike* test, a regulation will be invalidated only when "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (holding an Arizona law requiring a company build and operate a $200,000 packing plant in the state was clearly an excessive burden compared to Arizona's legitimate interest in protecting the reputation of produce growers within the state).

The Complaint makes conclusory assertions that the 2023 Ordinance serves no legitimate purpose. Compl. ¶¶ 72, 74. This is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (finding conclusory allegations are insufficient to overcome a motion to dismiss). And

while Plaintiffs point to other ways the City *could* have reached its goals, they fail to plausibly allege the 2023 Ordinance's effect on interstate commerce *clearly outweighs* local benefits. *See Rosenblatt*, 940 F.3d at 452 ("Even if the complaint alleges facts showing that the local benefits claimed by the city are all illusory or illegitimate, it must also plausibly allege the ordinance places a 'significant' burden on interstate commerce."). Count II is dismissed without prejudice.

### III. Count III fails to plead a plausible Contract Clause violation.

Count III alleges a violation of the Contract Clause of the United States Constitution and Article I, Section 13 of the Missouri Constitution.[10] Compl. ¶¶ 77–83. Plaintiffs argue the 2023 Ordinance prevents them from fulfilling contracts for future guest reservations (totaling over $200,000 collectively), and the 2023 Ordinance could have been drafted in a more appropriate and reasonable way. *See* Pls.' Resp. at 14–15. The City argues Count III is conclusory and, alternately, Plaintiffs did not have a reasonable expectation to contract with guests before obtaining a permit.

"The Contract Clause of the Constitution forbids states from interfering with contractual obligations." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022). The Eighth Circuit applies a "two-prong test to determine whether a state has impermissibly interfered with a contract: (1) whether the state law substantially impairs a contractual relationship, which takes into consideration the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights[;] and (2) if the first prong is met, whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose[.]'" *Id.* (cleaned up) (internal quotation marks and citations omitted).

---

[10] The Contract Clause of the United States Constitution states, "[n]o State shall enter into any … Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10, cl. 1. Likewise, the Missouri Constitution provides, "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." Mo. Const. art. I, § 13.

First, Plaintiffs have not articulated how the 2023 Ordinance substantially impaired the contractual relationship between Plaintiffs and future guests. Many Plaintiffs acknowledge they never had a valid 2018 permit to begin with, so even before the 2023 Ordinance was passed, it would be unreasonable for them to contract with guests before obtaining approval. And those that had a valid 2018 STR permit are necessarily safeguarded by the 2023 Ordinance since it explicitly exempts them from its restrictions. Further, it is unreasonable for individuals to conclude from the passage of earlier, less restrictive ordinances, "that they could continue to conduct short-term rentals indefinitely without additional restrictions." *Nekrilov*, 45 F.4th at 679; *see Heights*, 30 F.4th at 729 ("[A]n aggrieved party cannot claim that its expectations were disappointed if it was reasonably foreseeable to the party that the government could substantially interfere with its contract."). The fact the City had regulated STRs before with the 2018 Ordinance made it foreseeable the City could impose additional regulations in the future.

Second, even assuming the 2023 Ordinance substantially impaired Plaintiffs' upcoming contracts, Plaintiffs' statement that the 2023 Ordinance *could* have been drafted in a more appropriate and reasonable way and that it serves no legitimate purpose is conclusory and will not survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Plaintiffs' reliance on *Heights* is equally unpersuasive.[11] As the Supreme Court has noted, "where the state is not itself a party to the affected contract, 'courts should properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.'" *Nekrilov*, 45 F.4th at 680 (citing *Keystone Bituminous*

---

[11] *Heights* involved an executive order issued by Minnesota's governor during the COVID-19 pandemic that prevented landlords from evicting tenants, absent a few narrow exceptions, to stop the spread of COVID-19, even if a tenant failed to pay rent. The plaintiff, a property owner, pled sufficient facts demonstrating the executive order was not reasonably tailored because it "imposed broad restrictions requiring landlords to house tenants engaging in material breaches of the lease—some of which undermined efforts to combat the virus—that had nothing to do with the nonpayment of rent." *Heights*, 30 F.4th at 731. For instance, the complaint alleged tenants were operating shops on the premises and holding raucous parties, neither of which helped combat COVID-19.

16

Case 4:23-cv-00395-DGK   Document 46   Filed 10/02/23   Page 16 of 21

*Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987)); *see Ass'n of Equip. Mfr.s v. Burgum*, 932 F.3d 727, 730 (8th Cir. 2019); *see also Outdoor Graphics, Inc. v. City of Burlington, Iowa*, 103 F.3d 690, 695 (8th Cir. 1996) ("It has long been recognized that reasonable zoning ordinances are generally a lawful exercise of a state's police power to regulate in the interest of public health, comfort, safety, convenience and maintenance of property values."). Here, the City articulated significant and legitimate purposes for the 2023 Ordinance and is not a contracting party, so the Court will not second-guess the necessity and reasonableness of that measure. Count III is dismissed without prejudice.

## IV. Count VI fails to plead a plausible Procedural Due Process violation.

Count VI seeks a declaratory judgment voiding the 2023 Ordinance for violation of procedural due process under the Fourteenth Amendment of the United States Constitution and the Missouri Constitution. Plaintiffs allege they were not given a meaningful opportunity to be heard on the then-proposed 2023 Ordinance at two public hearings before it was passed, and that they were not provided paper copies of the 2023 Ordinance as required by the City Counsel's standing rules. Compl. ¶¶ 105–112. The City argues these allegations do not amount to a procedural due process violation.

In response, Plaintiffs do not defend Count VI as plead, but instead assert new facts and arguments[12] which the Court declines to consider because a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Fischer*, 792 F.3d at 990 n.4 (quotation omitted). Further, failing to make arguments in support of the claim raised in the Complaint constitutes

---

[12] For instance, Plaintiffs argue for the first time that the City violated procedural due process rights by not approving pending applications under the 2018 STR Ordinance, by deleting and/or denying applications without providing Plaintiffs notice and an opportunity to contest the denial, and by taking inconsistent positions on the appeals process to the BZA. *See* Pls.' Resp. at 23–24, 26.

waiver. *See Lee*, 912 F.3d at 1053–54 (stating "even a complaint that passes muster under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint").

Accordingly, Count VI is dismissed without prejudice.

## V.  Count VII fails to plead a plausible Substantive Due Process violation.

Count VII seeks a declaratory judgment voiding the 2023 Ordinance for violation of substantive due process under the Fourteenth Amendment of the United States Constitution and the Missouri Constitution.  Plaintiffs contend the 2023 Ordinance (1) "prohibits families of more than 8 persons from gathering[;]" (2) violates their fundamental property rights "to work and enjoy the fruits of their labor[,]" "enjoy the benefits of their Contracts[,]" and retain their "vested Property rights as non-conforming uses[;]" and (3) violates their "rights in gathering to celebrate marriages, funerals, and other religious rights [sic] of passage."  Compl. ¶¶ 115–18.

The City argues these allegations are conclusory and Plaintiffs have failed to demonstrate how the 2023 Ordinance shocks the conscious.  The City is correct.

As one district court recently observed,

> [s]ubstantive due process may be violated if state action either shocks the conscience or offends notions of fairness or human dignity. Due process claims involving local land-use decisions must demonstrate that the government action complained of is truly irrational, that is, something more than arbitrary, capricious, or in violation of state law.  The action must, therefore, be so egregious or extraordinary as to shock the conscience.

*King v. City of Marion, Arkansas*, No. 3:19-CV-00207-KGB, 2020 WL 534173, at *11 (E.D. Ark. Feb. 3, 2020) (cleaned up) (quoting and citing *Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999); *Anderson v. Douglas Cty.*, 4 F.3d 574, 577 (8th Cir. 1993); and *Cnty. of Sacramento v.*

*Lewis*, 523 U.S. 833, 846–47 (1998)).  Applying the law to the 2023 Ordinance, the Court finds it does not shock the conscious.  The City has identified legitimate reasons for passing the 2023 Ordinance, and other courts have upheld similar ordinances passed for similar reasons.  *See, e.g.*, *Nekrilov*, 45 F.4th at 679–80 (finding the "desire to protect the residential character of neighborhoods and reduce nuisance activity associated with short-term rentals" were legitimate public purposes for passing STR ordinance).  Further, the Court fails to see how the 2023 Ordinance "offends notions of fairness or human dignity" since it exempts those with valid 2018 STR permits from its restrictions.  Plaintiffs remaining allegations, like the notion the 2023 Ordinance violates any right to celebrate marriages, funerals, or religious gatherings, are conclusory.  *See Iqbal*, 556 U.S. at 678.  In fact, they are borderline frivolous.

Accordingly, Count VII is dismissed with prejudice.

**VI.     Count IX fails to plead a plausible right to mandamus relief.**

Count IX is brought under Missouri law and seeks a writ of mandamus ordering the City to process and approve all Plaintiffs' applications "which were and/or could have been submitted before June 15, 2023." Compl. at 19.  Plaintiffs argue the City was required to approve all pending applications under the 2018 Ordinance, and those that failed to apply during this time should nonetheless be allowed to apply under the 2018 ordinance (thus exempting them from the 2023 Ordinance) because they made substantial investments in their properties.  The City argues it had no ministerial duty to approve pending applications once the 2018 Ordinance was repealed on May 4, 2023, or to approve applications never submitted.

"Mandamus is a discretionary writ, not a writ of right."  *State ex rel. Petti v. Goodwin-Raftery*, 190 S.W.3d 501, 506 (Mo. Ct. App. 2006).  "The purpose of [such an] extraordinary writ of mandamus is to compel the performance of a ministerial duty" that one refuses to perform.

*Chastain v. Kansas City Missouri City Clerk*, 337 S.W.3d 149, 155–56 (Mo. Ct. App. 2011) (quoting *Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 165–66 (Mo. banc 2006)). Importantly, "mandamus enforces existing rights, but may not be used to establish new rights. Whether a petitioner's right to mandamus is clearly established and presently existing is determined by examining the statute or ordinance under which petitioner claims the right." *Id.* at 156–57 (quotation omitted) (refusing to issue mandamus where plaintiff failed to show "the law *required* the official to act in a particular way").

Plaintiffs fail to identify—nor can the Court find—a provision obligating the City to process and approve pending applications, much less Plaintiffs' *incomplete* applications or applications they never submitted, under the 2018 Ordinance after it was repealed. *See* 2018 Ordinance, ECF No. 1-18. Plaintiffs' argument to the contrary is conclusory. *See Iqbal*, 556 U.S. at 678. Finally, "the proper avenue for challenging the permitting process is an appeal to the [BZA]." *Lamar Co., LLC v. City of Kansas City*, 330 S.W.3d 767, 770 n.1 (Mo. Ct. App. 2010).

Because Count IX cannot possibly be re-pled to plead a plausible claim, Count IX is dismissed with prejudice.

## VII.     Count XIV fails to state a claim for relief.

As best the Court can tell, Count XIV requests a declaratory judgment invalidating the 2023 Ordinance because it allegedly "attempts to deprive the Plaintiffs of their rights to a valid non-conforming use that runs with the land" by making them re-register under the 2023 Ordinance if they transfer property ownership in the future. Compl. ¶¶ 148–52. The City argues this claim

relies on legal conclusions, and alternatively, the plain language of the 2023 Ordinance refutes this presumption.[13]  The Court agrees.

Count XIV rests entirely on conclusory allegations and is insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Neither the Complaint, nor Plaintiffs' response, cite a legal basis for this claim.  In fact, Plaintiffs' response raises a new request for relief (again without citing a legal basis or caselaw in support), which the Court will not consider.  *See Lee,* 912 F.3d at 1053–54 (failure to make legal arguments in support of the claim raised in the Complaint constitutes waiver); *Fischer*, 792 F.3d at 990 n.4.  Accordingly, Count XIV is dismissed without prejudice.

## VIII.  Plaintiffs' request for a preliminary injunction is denied.

Because the Court grants the City's motion to dismiss in its entirety, Plaintiffs' motion for a preliminary injunction, ECF No. 5, is DENIED AS MOOT.

### Conclusion

For the reasons stated above, the City's motion to dismiss Plaintiffs' complaint is GRANTED.  Plaintiffs' motion for a preliminary injunction, ECF No. 5, is DENIED AS MOOT. Plaintiffs' motion for leave to file an amended complaint, ECF No. 45, which Plaintiffs filed after Defendants' motion to dismiss was fully briefed, is also DENIED AS MOOT.

**IT IS SO ORDERED.**

Date:  October 2, 2023                          /s/ Greg Kays
                                                 GREG KAYS, JUDGE
                                                 UNITED STATES DISTRICT COURT

---

[13] Seemingly satisfied with the City's position that nonconforming uses run with the land, Plaintiffs' response contains a new request: that the Court issue a declaratory judgment stating the 2023 Ordinance allows nonconforming uses to run with the land.  Pls.' Resp. at 31.  This new request is accompanied by new factual allegations, *see id.* at 32 (stating City officials have taken different stances on the 2023 Ordinance's language), neither of which the Court considers. *See Fischer*, 792 F.3d at 990 n.4.